RIVES, J.
The petitioner in this case was convicted at the October term, 1866, of the Circuit Court for the county of Halifax, of having received a bribe for the non-performance of a duty pertaining to his office as constable. The case is brought to this court upon a bill of exceptions to the court’s refusal of a new trial on the ground that the verdict was contrary to the evidence. This is the whole and only case presented by the record. If there be, as it is now alleged any defect in the indictment, it escaped the notice of the petitioner’s counsel below, and was not availed of either by demurrer before trial, or by plea in arrest of judgment after verdict. I propose, therefore, first to confine myself to the issue made by the pleadings in this cause, namely, the sufficiency of the evidence to sustain the verdict.
The principle which governs this court on questions of new trial, has been so repeatedly settled as to render it unnecessary to cite the various cases in which it has been determined. For obvious reasons, this court invariably declines to set aside verdicts, unless the evidence is plainly insufficient to sustain them. Juries are the appropriate triers of facts, and authorized to draw from them all proper in ferences and presumptions; and the whole scheme and policy of our law; forbid the inference of the court with their verdicts, unless they are manifestly unsupported by or contrary to the testimony.
The first allegation here, of the insufficiency of the evidence, is, that there was no proof of a pending warrant. Not being a matter of record, it was to be proved by parol, *and in such a manner as to satisfy the jury of the fact. Now, then, it was shown that it was the practice of the justice trying warrants in the district of which the petitioner was constable, to issue them in blank with his signature, and leave the constable to fill them up as suitors required — a practice so prevalent as to make it the ordinary procedure in cases triable by single justices. It was further prove that the constable told Moore that he had such a warrant against him; and after-wards, in his corrupt agreement with Moore, he undertook, with all the formality of writing, and under his own hand, that “the warrant of J. R. New against J. M. Moore should be dismissed at the costs of the said New.” The jury, therefore, in my opinion, were well warranted by this state of proofs, in finding not only the existence of the warrant, but the further and material fact, that it was in his hands and under his control.
Again, it is said, no warrant could have been maintained on a claim for damages for killing hogs; but such was not New’s claim, as set forth in the evidence; he was suing for the value of his hogs, waiving the trespass, &c. ; but even had it been otherwise, the warrant would have been good under the act of the restored government, 1863-4, \ 3, p. 32.
The third and last ground of objection is that it does not appear that the claim was to have been collected by warrant; and if so, that such warrant could have been dismissed by the justice only, and not by the constable. It is clear that the claim was put into his hands for collection; and it is equally clear, by his verbal and written admission, that he elected, as he had a right to do, to warrant for it. He did not say to Moore, “I have a claim against you from J. R. New for the value of two hogs you had killed;” but, on the contrary, “I have a warrant • against you for the sum of eighteen dollars in behalf of *J. R. New.” And when he received the money he did not acknowledge it to be in satisfaction of a claim of New, but agreed therefor to “dismiss the warrant of J. R. New;” nor' did he pay over this money or any part thereof to New, but left him, in ignorance of the transaction, to seek new process and employ another constable to assert a claim which he, the petitioner had so unlawfully and corruptly delayed and defeated. There is not a particle of testimony in this cause to extenuate the conduct of the petitioner; he permits New to descend to his grave without any account of this unwarrantable and criminal abandonment of his suit, and without any apology for the contumely and insult of undertaking, for a pecuniary reward, to remove him from his home at the instance and upon the representations of his adversary.
It does not seem to me correct or fair to *866 impute to the term “dismission” any-of that technical force or meaning which it might have when applied to cases in a court of record. Used in the connection in which it is here employed, it is tantamount to “abandonment,” “failure to prosecute,” or “a destruction or non-return of the warrant;” and in my view any one of these acts of misfeasance or non-feasance w.ould constitute that official delinquency denounced and punished by this statute. The constable is in some measure the agent of those placing claims in his hands for collection ; and when acting fairly and bona fide, might be well authorized to dismiss their warrants, or procure them to be dismissed; nor could the justice entrusting him with warrants signed in blank object to the constable’s disposition of them; or arrogate to himself the exclusive and empty formality of dismissing warrants, of whose existence he had not been cognizant; nor in such a case of corrupt practice as that at bar could it be expected of the constable to return his process and ask *the justice for a dismission upon the disclosure of his guilty bargain with the defendant to the warrant.
I have thus endeavored to consider and dispose of this case as it is made out by the record, and I cannot refrain from saying that, in my judgment, there could be no clearer case for this court’s refusal to interfere with the verdict and judgment below.
But it is now contended here, for the first time, that the verdict of guilty does not ascertain an offence, because the indictment sets out none. I may be excused for saying that, in my view, the value of this discovery is impaired, and its reality discredited, by the noticeable fact that it eluded the vigilance of the counsel who prepared the case for appeal, and neither demurred or removed an arrest of judgment on account of this alleged defect.
Concede, however, that this case is now to be construed as if pending on a plea in arrest of judgment because of the insufficiency of the indictment. Our present Code briefly declares, that 1 ‘judgment in any criminal case after a verdict shall not be arrested nor reversed upon any exception to the indictment or other accusation, if the offence be charged therein with sufficient certainty for judgment to be given thereon according to the very right of the case.” Code, ch. 207,12, p. 832. This is a condensation or abbreviation of the Stat. 1 Rev. Code 1819, ch. 169, (j 44, and involves no discrepancy in meaning or substance. The only condition required to obviate such exception after verdict (which, under the over-nice practice of former times, had become, in the language of Cord Hale, “a disease of the law,”! was such a certainty in the charge as to warrant a judgment thereon according to.the very right of the case. To ascertain whether this condition is met by this indictment, we must first fix the exact requisites of this statutory offence. Code, ch. 194, *(j 6, p. 799. First, the subject of the charge must be “an officer authorized to serve legal process.” Secondly, there must be “the receipt of money or other thing of value;” and thirdly, for his bribe there must be an “omitting or delaying to perform a duty pertaining to his office.” These are all the ingredients of the offence. As to the first two, no question is made or doubt expressed of the sufficiency with which they are set forth in the indictment; but a difficulty is suggested as to the mode in which the nonperformance of the official duty is alleged. It is stated as consisting in “the dismission of a pending warrant” without a distinct averment that the warrant was in the petitioner’s custody, or without mentioning the justice befoi'e whom it waspending. Now, if the official delinquency was only predicated of the service of the process, there would be some plausibility in the objection ; but the statute lays it more broadly and comprehensively, as a neglect of “any duty pertaining to his office. ’ ’ Hence what relates to the service of the process attaches only to the description of the officer; and the indictable Offence embraces the omission on the part of such officer, for a bribe, of any duty whatsoever pertaining to his office. I have heretofore given my reasons for treating the charge of dismissing the warrant under the circumstances, as equivalent to the charge of failing to serve or to return or to prosecute it to judgment; and therefore, I deem this part of the indictment a sufficient and certain charge of the official non-feasance, of which the petitioner was convicted and sentenced.
A leading authority as to the character of the defects not cured by the statute is the case of The Commonwealth v. Peas, 2 Gratt. 629. In that case there was no averment of one of the requisites of the statutory offence, namely, that the slave was carried from one county to another without the consent of the owner; and it was ^properly held, that such a defect was fatal after verdict, and was not cured by the statute. But how dissimilar is that case from this? Here there is no one ingredient of this offence left to rest upon in-tendment or implication; but it is specially set forth byr a direct, positive, and clear averment, needing no other aid in its construction than what may be derived from a right and reasonable understanding of the terms and language used. There is no such lack"of circumstantial description of the of-fence as to expose the petitioner to the danger of surprise on the trial; to disable him from his defence, or to deprive him, after trial, of the full protection of the verdict to shield him from another prosecution;. all of whtoh are obvious mischiefs relied on to avert tne statutory cure of jeofails.
I do not deem it necessary or material to consider and analyze other decisions that have been made by this court upon this question; they all turn upon the palpable absence of averments to establish and characterize the offence. I confess myself unable to discern the substance of the *867 objections taken to this indictment. They are of that over-nice description which, however they7 might have availed on demurrer while the defendant could have been held over to another indictment— a question I do not decide — ought not now, in my opinion, to enure to his acquittal.
For these reasons, I conclude that this indictment should be adjudged sufficient upon a plea in arrest of judgment, if such a one had been made in this record; and I feel a greater safety and confidence in arriving at this result, because sustained by the petitioner’s counsel below, who made no point of this sort.
Upon all these grounds of review, I am for affirming the judgment.
MONCURty, P.
The offence intended to be charged in *the presentment in this case, was that created by the Code, ch. 194, $ 6, p. 799; which declares that “if any officer authorized to serve legal process, receive any money or other thing of value, for omitting or delaying to perform any duty pertaining to his office, he shall be confined,” &c. As the terms of the statute are expressly confined to 1 ‘any officer authorized to serve legal process,” it might plausibly be contended, that the only duty the omission or delay to perform which was therein referred to was, the duty to serve legal process. But if that had been the intention of the legislature, they would probably have plainly said, “for omitting or delaying to serve any such process coming to his hands for execution, ’ ’ instead of, “to perform any duty pertaining to his office.” These general terms literally embrace any duty pertaining to the office of one who is authorized to serve legal process ; and such, I think, is the true con-1 struction of the statute.
The natural and proper mode of charging a violation of this statute is, to aver that the accused was an officer authorized to serve legal process, as for example, a constable ; that while he was such officer, it became his duty, as such, to perform ascertain act, as for example, to warrant for a claim entrusted to him for that purpose and recoverable by warrant, or to serve a warrant which had been issued on such claim, and placed in his hands for execution, &c. ; and that he unlawfully received a certain sum of money, or a certain other thing of value, for omitting or delaying to perform his said duty.
While this would be the natural and proper mode of making the charge, and would conform to the very terms of the statute, it might be sufficiently made in other terms which are substantially the same with those used in the statute, or which show conclusively or beyond a rational doubt to the contrary, that the accused is guilty of the *olfence described in the statute; at least such a defect would be cured by the verdict.
In this case the presentment does not make the charge in the natural and proper mode. The statute prohibits the receiving of money, &c., for a nonfeasance, for omitting or delaying to perform a duty. The presentment charges'the receiving of money for doing an act — a malfeasance it may be —that is, it charges the accused with unlawfully receiving twrenty-five dollars from James M. Moore, in consideration of which he unlawfully agreed to dismiss a warrant then pending for a claim which had been put into his hands as constable for collection by John R. New, in behalf of said New against the said Moore, at the cost of said New, and that he did afterwards unlawfully dismiss and procure to be dismissed the said warrant, without the knowledge or consent of said New.
To be sure, the presentment concludes, and so the accused did “receive money for omitting and delaying to perform a duty pertaining to his office as constable,” &c. But this general conclusion in the word of the statute, is certainty not sufficient, of itself, to require the accused to answer the charge, and therefore the specification contained in the preceding part of the presentment cannot be stricken out as surplusage, so as to leave enough to make a substantial and sufficient charge of the offence created by the statute. It was necessary to specify7 the offence; and therefore the specification in the presentment was made.
But does that specification charge the offence? It does not do it expressly, as we have seen. It does it argumentatively, or by implication only, if at all. Is the implication necessary or inevitable? Does the specification show conclusively, or beyond a rational doubt to the contrary, that the accused is guilty of the offence created by the statute? I think not. The accused might have done the *act he is charged with having done by the presentment, and still not have been guilty of the statutory offence. His agreeing to dismiss a warrant, and afterwards dismissing and procuring it to be dismissed, was not, necessarily, “omitting and delaying to perform a duty pertaining to his office.” It may be argued that his dismissing, or procuring to be dismissed, the warrant, was, in effect, omitting or delaying to execute the warrant. But this is not so — at least in legal contemplation. The warrant, consistently with the presentment, may never have come to his hands for execution. No averment that it ever did is contained in the presentment. The claim was put into his hands for collection, and it is probable that the warrant also was, if any warrant was ever issued. But it is possible that a warrant may have been issued on the claim and put in the hands of another constable. Or it is possible that the warrant may have been served and then pending for trial before a justice, waiting for the parties to be ready with the witness to go to trial in a disputed case. If in such a state of the case the accused had received twenty-five dollars for dismissing the warrant, or procuring it to be dismissed, what duty pertaining to his office would he thereby omit or delay to perform? With what duty would *868 he be charged in such a case? The warrant would have been executed and returned, the witness summoned, and the whole matter would have been in the hands and under the control of the justice, who, alone, could dismiss the warrant. The constable or any body else might procure it to be dismissed, and thereby be guilty of a criminal act; but it is not perceived how he could be guilty of an omission or delay of duty under the statute in question. Again, the claim being entrusted to the accused as constable to warrant for, he had authority to collect it, I suppose even after warrant issued, and he and his sureties would have been liable for the money so deceived, as for money collected under execution. Code, ch. 150, § 13, p. 643. He might, therefore, lawfully have received the twenty-five dollars in payment of the claim and costs, and to have the warrant dismissed, and afterwards procured the warrant to be dismissed. The charge of these facts, therefore, is not a charge of a criminal offence, much less .the offence created by the statute. It is true the acts are charged to have been unlawfully done; but the word “unlawful” is not sufficient, in such a case, to bring it within the terms of the statute.
I do not think the defect in the presentment in this case is cured by the statute of jeofails; Code 832, ch. 207, § 12; as I think will plainly appear by reference to the authorities cited in the margin of the Code. 2 Virginia Cas. 122; 2 Leigh 709; 4 Id. 675; 2 Gratt. 629. That st.atute was not intended, as was well said by the court in Barker’s case, 2 Va. Cas. 122, to introduce a carelessness ' or laxity in pleading, but merely to cure those defects which the over-nicety of the courts had introduced into the common law, and which did not put the rights of the Commonwealth or the accused into jeopardy. Trimble v. The Commonwealth, 2 Va. Cas. 143, gives an instance of a defect which was cured after verdict by the statute of jeofails. The statute creating the offence which was prosecuted in that case, used the word “voluntarily,” in describing the offence. The indictment omitted that word, and used the word “willfully” in lieu thereof. This would have been a fatal defect on demurrer, though cured by the statute after verdict. According to the very terms of the statute, the offence must be' charged with sufficient certainty in the indictment or other accusation, for judgment to be given thereon according to the very right of the case. There must still be some certainty in the charge. But here the objection is that there is no certainty in the charge; indeed, that the offence created by the statute on *which the presentment is founded is not charged in the presentment at all. I take it to be a true rule of law, that wherever the facts stated in an indictment or other accusation may all be true, and yet the accused not be guilty of the offence intended to be charged against him, he cannot be thereon lawfully convicted of such of-fence ; and that, I think I have shown, is the case here.
I do not mean to say that if the offence created by the statute had been properly charged in the presentment, the jury would not have been warranted in finding the accused guilty; much less do I mean to say, that if the court below had refused to set aside a verdict of guilty in such a case, this court ought to reverse the judgment on that ground. What I mean to say is, that when we look at the presentment, and see that the offence is not charged therein at all, much less chafged with sufficient certainty for judgment to be given thereon, according to'jthe very right of the case, we cannot look to the' evidence to see whether the offence has been proved; but must render judgment in favor of the accused, whatever offence he may have committed, and however clearlj' his guilt may harve been proved.
Upon the whole, I think that the judgment ought to be reversed, and judgment rendered for the plaintiff in error, non ob-stante verdicto.
JOYNES, J., concurred in the opinion of Moncure, P.
The judgment was as follows:
It seems to the court, for reasons stated in writing and filed with the record, that there is error in the said judgment in this • — that no offence is charged in the presentment with sufficient certainty for judgment to be given thereon according to the verjr right of the case; therefore, it is considered that the said judgment be re-versed and ^annulled. And this court proceeding to enter such judgment as the said Circuit Court ought to have entered, it is further considered that, notwithstanding the verdict, the said indictment be quashed and the plaintiff in error be discharged from further prosecution under the same, and go thereof without day. And it appearing that the amount of the fine and costs of the prosecution have been paid into the said Circuit Court, it is ordered that the cause be remanded to the said court for an order of restitution to be made therein, if the said amount be yet in the hands or power of the court; which is ordered to be certified to the said Circuit Court.
Judgment reversed.